STATE of South Dakota, Plaintiff
and Appellant,

v.

Randy S. PFAFF, Defendant
and Appellee.

No. 16784.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1990.

Decided May 30, 1990.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre (Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief), for plaintiff and appellant.

Robert G. Mines, Hot Springs, for defendant and appellee.

MORGAN, Justice.

The State of South Dakota (State) takes an intermediate appeal from an order suppressing evidence in the trial of Randy S. Pfaff (Pfaff). We affirm.

On November 29, 1988, Pfaff was stopped on Highway 79 south of Rapid City, South Dakota, by State Highway Patrol Trooper Lowell Nelson (Nelson) for doing 68 mph in a 55 mph zone.

When Nelson approached Pfaff's car, he noticed that Pfaff was smoking a recently lit cigarette, a sign that made Nelson suspicious that Pfaff might be trying to mask the smell of alcohol. Nelson also noticed two air fresheners in the car, one hanging from the mirror, another lying on the floor board.

Nelson requested that Pfaff produce a driver's license and vehicle registration. Pfaff produced a North Dakota driver's license but no vehicle registration. Prior to the trooper's decision to search Pfaff's vehicle, Nelson determined that Pfaff possessed a valid driver's license and that the automobile was properly licensed in Colorado.

Nelson asked Pfaff to accompany him to the patrol car. When Pfaff exited his car, he was not wearing a jacket, though it was a cold day. The two returned to Nelson's patrol car and Nelson began filling out a citation. While initially suspecting Pfaff of DWI, once Pfaff was in the patrol car, Nelson realized that was not the case. Pfaff appeared normal and relaxed, revealing no indicia of drug or alcohol intoxication.

As Nelson completed the traffic citation, he claims that he smelled raw marijuana on Pfaff's person. Nelson confronted Pfaff, informing him he smelled marijuana on his person and that he suspected Pfaff of possessing marijuana. Pfaff denied smoking marijuana.

Then, Nelson announced that he was going to search Pfaff's car, to which Pfaff refused to give consent. After Nelson announced his intention to search, Pfaff acted nervous and evasive. When Pfaff started to exit the patrol car to return to his vehicle, Nelson stopped him and accompanied him to his car.

At the vehicle, Pfaff was permitted to retrieve his coat because of the cold temperature. Before putting it on, Nelson required that Pfaff permit him to search the jacket. Though Nelson testified he was checking for weapons or contraband, he did not state that he felt that Pfaff was dangerous or that he, Nelson, was in any danger. Instead, he testified that it was his procedure to search *everyone* in this situation. When Nelson patted down the jacket, he felt a packet in a pocket that he could determine by touch was not a weapon. It was a packet of gold. Nelson admitted he seized the packet knowing it was not a weapon. Nelson additionally found a foil label in a pocket that he admitted did not feel like a weapon. He examined this foil sticker and said that fine particles of marijuana were attached to the sticky portion of the label.

Next, Nelson conducted a search of the interior of Pfaff's car. No contraband was found. However, Nelson claimed that he could smell marijuana in the compartment, despite the smell of air fresheners. In addition to the two air fresheners previously mentioned, Nelson discovered another under the driver's seat and an unopened packet on the floor.

Still convinced there were drugs in the car, Nelson popped the trunk release and searched the trunk. There he found the following: packages of marijuana and hashish wrapped in layers* of closed, tightly-sealed, garbage bags, packaged inside a duffle bag, suitcase, and grocery bag. Additionally, Nelson found pills and foil wrapped hashish in a sealed overnight bag. During the search, State Trooper Steve Nichols (Nichols) arrived at the scene and participated in the search. Though Nichols testified that marijuana could be smelled in the driver's compartment and coming from the trunk, Nelson had breached several of the sacks of marijuana by the time Nichols arrived.

During the course of the search, all the sealed bags were breached by the troopers.

---

* Nelson's testimony is ambiguous on this point. He testified that the marijuana was packaged in anywhere between four layers and two layers of garbage bags. Importantly, he testified that *all* the bags were sealed.

As a result of these actions, when the State's expert, Dr. Jack Gaines (Gaines), examined the containers and packages, he found tiny holes permitting marijuana to leak out, thus requiring repackaging.

Prior to filling out his arrest report, Nelson felt compelled to contact a Utah Highway Patrol Officer who had given him a class on the drug courier profile in order to brush up on what was required for this determination. Nelson also spoke to several other highway patrol officers and a member of the Pennington County State's Attorney's Office, trying to determine whether he had enough evidence for probable cause to search Pfaff's car.

Pfaff was arrested and charged with possessing marijuana in violation of SDCL 22–42–6 and possession of a controlled substance, hashish, in violation of SDCL 22–42–5. At trial, he moved to suppress the evidence seized as being in violation of his rights under the Fourth Amendment to the United States Constitution and art. VI, § 11 of the South Dakota Constitution.

At the suppression hearing, Pfaff offered evidence on whether Nelson could have smelled marijuana on his person and in the vehicle. Mr. Roger Kierstead (Kierstead), an expert in the field of marijuana investigation and detection, testified. The prosecutor stipulated that Kierstead was an expert, going so far as to declare, "I have all the faith in this witness." Kierstead testified to the following: whether Nelson could have smelled marijuana on Pfaff's person and whether Nelson could have smelled marijuana in Pfaff's vehicle. He based his opinion on the information supplied by the defense attorney as well as speaking to Pfaff about how the drugs were wrapped. Kierstead testified that considering the number of layers the marijuana was wrapped in, the fact that there were numerous air fresheners throughout the car and trunk, the fact that Pfaff was smoking and the fact that a strong north wind was blowing away from the vehicle, Nelson could not have smelled marijuana on Pfaff's person or in the vehicle. Kierstead opined that Nelson had smelled air freshener.

Additionally, the prosecution chemist, Dr. Gaines, testified that if the marijuana was surrounded by four or five layers of garbage bags, as was testified to by Kierstead, only a dog could detect the odor of marijuana, not a person.

Finally, at the suppression hearing Nelson was pressed to articulate what composed the "drug courier profile." Under cross-examination, Nelson admitted that he had not really been taught a profile, but just a wide range of things to look for. When pressed for details, Nelson mentioned out-of-state license plates, use of air fresheners, demeanor, use of rental cars (not present), Highway 79 because it was an artery between Denver (a source for drugs) and Rapid City, and people who were Mexican or Columbian and did not speak English (not present). Ultimately, Nelson testified that he would have to look at the notes from the class he took to provide any better information.

The trial court ordered the evidence suppressed, making specific mention of its consideration of the witnesses' credibility. It found that it did not believe Nelson could have smelled marijuana on Pfaff or inside his vehicle.

The State raises the following issue:

Whether the trial court abused its discretion in suppressing the evidence seized from Pfaff's car.

■ We first note our standards of review. Since State contests a factual determination made by the trial court as well as the lack of probable cause determination, two standards of review are implicated. First, as to the factual determination, we said in *State v. Woods,* 374 N.W.2d 92, 98 (S.D.1985):

[A] trial court's findings resulting from a suppression hearing will be upheld unless clearly erroneous, (citation omitted) and that our function under that standard is to determine whether the findings are clearly against the weight of the testimony. (citation omitted)

■ Second, as concerns the ultimate decision to suppress the evidence, we stated

in *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987):

> For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.

Under the abuse of discretion standard, we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision. *Peterson v. Peterson*, 434 N.W.2d 732 (S.D. 1989).

■ The law as to warrantless car searches is well settled. Both sides acknowledge that the United States Supreme Court, as well as this court, have held that when a law enforcement officer stops a vehicle, and the officer has probable cause to believe the vehicle contains contraband, the vehicle may be searched without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Peterson*, 407 N.W.2d 221 (S.D.1987). The search may include the interior of the car as well as the trunk. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Peterson, supra*. Finally, the odor of a substance alone may provide probable cause to search. *Peterson, supra; see also United States v. Haley*, 669 F.2d 201 (4th Cir.1982) *cert. denied* 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982) (trooper smelled marijuana on suspect while in the squad car).

■ The trial court acknowledged this precedent, but found that Nelson could not have smelled marijuana on Pfaff's person or in his vehicle; therefore, Nelson lacked probable cause to search Pfaff's car. State claims the finding as to Nelson's ability to smell the marijuana was clearly erroneous. We disagree.

The gravamen of State's argument is that the bags that the marijuana was packaged in were torn; thus, the defense expert's testimony that Nelson could not have smelled the marijuana was based on faulty information. We have thoroughly reviewed the record and Nelson's testimony is clear—the bags were *sealed* when he discovered them in the trunk. Any tears in the bag were produced *during* Nelson's and Nichols' search of the trunk. Furthermore, Nelson testified that the marijuana was packaged in anywhere between four layers and two layers of trash bags and placed in sealed containers. Also, the defense expert Kierstead relied on his conversation with Pfaff that the marijuana was packaged in four layers of sealed garbage bags, then placed in closed containers. *State v. Esslinger*, 357 N.W.2d 525, 528 (S.D.1984) (expert may form opinion on hearsay information); SDCL 19–15–3, *see generally* 3 Weinstein's Evidence § 703[4] (1988).

Nor are we dissuaded by State's argument that Trooper Nichols also smelled marijuana in searching the car. What State omits in this discussion is the fact that Nelson had already opened several bags of marijuana *before* Nichols arrived. So, quite logically, Nichols would have smelled marijuana.

Indeed, Nichols' testimony is ultimately detrimental to State. Though he transported Pfaff to the jail, he made no mention of smelling marijuana on Pfaff's person.

Quite simply, this issue comes down to the trial court's judging credibility. It was in the position to observe the witnesses testifying, and we give due regard to its superior position to judge credibility. *Langerman v. Langerman*, 336 N.W.2d 669 (S.D.1983). We would note there is ample evidence to warrant the trial court's suspicion of Trooper Nelson's testimony. Nelson's contacting other state troopers and members of the Pennington County State's Attorney's Office to discuss probable cause before he wrote his arrest report justified the trial court's concerns. This, coupled with the prosecutor's statement that he had "all the faith" in expert Kierstead, who testified that Nelson could not have smelled the marijuana, leads us to the conclusion that the trial court's findings were not clearly erroneous. *Woods, supra*.

Next, we address the State's argument that the trial court abused its discretion in not considering the cumulative effect of factors observed by Nelson that gave him probable cause to search Pfaff's car. In particular, State claims that Nelson's use of the drug courier profile was sufficient to provide probable cause to search and cites us to the United States Supreme Court decision of *United States v. Sokolow*, 490 U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

First, *Sokolow* was not a warrantless probable cause search, but, rather, use of the drug courier profile to establish reasonable suspicion for an *investigatory stop*. The DEA agent later uncovered further evidence through the use of a drug detection dog to establish probable cause to justify issuance of a search warrant from a judge. It is critical to note that suspicion necessary for an investigatory stop is much less than required for a probable cause search. 490 U.S. at ——, 109 S.Ct. at 1585, 104 L.Ed.2d at 10. Moreover, the DEA agents were not attempting to use the profile as a substitute for facts establishing probable cause as State is here.

Second, the *Sokolow* agents were able to document a drug courier profile and demonstrate how otherwise seemingly innocent conduct added up to a pattern of criminality. Specially, Sokolow paid for $2,100 in plane tickets with a roll of $20 bills; he was traveling to Miami (a known drug center) with a short turn-around time; he was using a different name than he was listed under in the telephone book; he appeared nervous while traveling; and he checked no luggage. It is not difficult to see how these innocent acts lead to the suspicion of possible criminal conduct.

Under our facts, Pfaff's innocent acts, when added to totality, remain innocent, not indications of criminal activity. We note at the outset that Nelson was hesitant to even describe what he used as a "drug courier profile." When pressed for information about the profile, he admitted several of the factors were not present. The factors that he did use—air fresheners, out-of-state plates, on a highway between Rapid City and Denver (there was no indication that Nelson knew Pfaff's destination) and a nebulous comment about demeanor—did not even rise to the level of reasonable suspicion found in *Sokolow*. We, as was the trial court, are suspicious that Nelson really was not using a drug courier profile, but searched on mere suspicion, not probable cause, then after the fact looked for any reason possible, no matter how tenuous, to justify his search.

Third, contrary to State's assertion, we believe the trial court considered the cumulative effect of Nelson's observations. The flaw in State's theory is that even considered together these factors do not establish probable cause. A review of the evidence shows the following information before the court: (1) Nelson's discredited claim that he smelled marijuana on Pfaff's person or in his vehicle; (2) no indication that Pfaff appeared under the influence of drugs or alcohol; (3) no testimony from Trooper Nichols who took Pfaff to jail that he smelled marijuana on Pfaff's person; (4) Pfaff lit a cigarette when Nelson approached the car; (5) Pfaff got out of the car on a cold day without his coat; (6) Nelson saw an air freshener hanging on the mirror and on the floor board; (7) Nelson accused Pfaff of possessing marijuana and Pfaff denied smoking it and refused consent to search his vehicle; (8) Pfaff became nervous when accused of a crime. Viewed in totality and with common sense, these factors lead to nothing more than suspicion and certainly not probable cause to believe the car contained evidence of a crime. *State v. Robinette*, 270 N.W.2d 573 (S.D.1978). We do not find that the trial court abused its discretion in suppressing evidence seized by Nelson. *Bartlett, supra.*

Finally, Nelson's actions subsequent to determining that he possessed probable cause to search cannot justify his actions. Even if we desired to use the discovery of drugs in Pfaff's car trunk and jacket as justification for the search, we cannot. The United States Supreme Court has stated many times that a search unlawfully undertaken is not made valid by evidence

of a crime which it brings to light. *White-ly v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Bumper v. State of North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1967); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

For all the foregoing reasons, we affirm the trial court.

All the Justices concur.