STATE of South Dakota, Plaintiff
and Appellee,

v.

Michael S. LOWNES, DOB: 06–09–
57 PCN#: 2032234, Defendant
and Appellant.

No. 17828.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1993.

Decided April 14, 1993.

Gary Campbell, Asst. Atty. Gen., Mark W. Barnett, Atty. Gen., Pierre, for plaintiff and appellee.

Robin L. Zephier, Office of Public Defender for Pennington County, Rapid City, for defendant and appellant.

WUEST, Justice.

Michael S. Lownes (Lownes) appeals his conviction for his fourth offense for driving under the influence of alcohol. We affirm.

## FACTS

At 7:10 P.M. on May 8, 1991, an anonymous caller informed the State Police dispatcher in Rapid City he thought someone named Mike had been drinking, was driving under the influence (DUI), did not possess a license, was out on bond from a previous DUI, had just left the Piedmont area driving a Harley Davidson motorcycle with red tanks and black saddlebags, was heading east on Interstate 90 to the West Boulevard exit to Rapid City and would proceed to Allen Street. The dispatcher relayed this information to Trooper Darrell Welch of the South Dakota Highway Patrol. At 7:23 P.M. Trooper Welch stopped a vehicle matching the dispatcher's description at milepost 54, the West Boulevard Exit on Interstate 90. The only reason for the stop was the information relayed to Welch by the dispatcher.

Trooper Welch approached Lownes' motorcycle and encountered a strong odor of alcohol; Lownes' eyes were bloodshot, glazed and dilated, his speech was slurred. Welch requested identification. Lownes produced an identification card but admitted his driver's license had been suspended. Lownes performed and failed the nose touch test and slurred the alphabet test; he then refused to perform additional tests.

Welch arrested Lownes and informed him of the implied consent law. Lownes refused to give a blood sample. Welch then received information Lownes had at least two prior DUI convictions. He then notified Lownes he would be required to submit to a test for blood alcohol (BAC) as this was a felony arrest.[1] Lownes refused to speak further and was taken to the Pennington County jail.

Blood was drawn at the Pennington County Jail by medical technician Jennifer Jordan in the presence of both Troopers Welch and Harley Ulmer. Jordan had difficulty with military time and erroneously noted the time of the blood sample as 18:30 hours rather than the correct time of 20:30. A blood sample card was marked by Welch,

initialed by Jordan and put with the sample into the locked evidence box at the jail.

Dr. Robert Looyenga of South Dakota School of Mines & Technology (SDSM & T) analyzed the sample and testified at Lownes' trial the blood test indicated a BAC of .17 percent. He further testified the BAC would have been higher at the time of the arrest, approximately an hour before the sample was drawn.

Lownes appeals stating four issues. We address the issues in order, noting additional facts where necessary.

We first note our standards of review. Since Lownes contests a factual determination as well as the finding of reasonable suspicion, two standards of review are involved. A trial court's findings of fact will be upheld unless they are clearly erroneous. *State v. Smith*, 477 N.W.2d 27, 31 (S.D.1991); *State v. Pfaff*, 456 N.W.2d 558, 560 (S.D.1990). The existence of reasonable suspicion is a question of law which is fully reviewable by this court. *See Smith*, 477 N.W.2d at 31 (the definition of probable cause employed by the court is a question of law with no presumption attaching to the circuit court's determination).

## I. THE TRIAL COURT DID NOT ERR IN DENYING LOWNES' MOTION TO SUPPRESS EVIDENCE DERIVED FROM A REASONABLE STOP.

■ The Fourth Amendment to the United States Constitution is implicated when a vehicle is stopped. The action constitutes a "seizure" even though the purpose of the stop is limited and the detention is brief. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In accord with the Fourth Amendment, a police officer may not stop a vehicle without a reasonable basis for doing so. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The probable cause required to make a stop is less than that required to issue a warrant or make an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20

---

1. SDCL 32–23–10 provides that consent to a blood test is unnecessary if the arrest is for a third or subsequent DUI within five years.

L.Ed.2d 889; *State v. Anderson*, 359 N.W.2d 887, 889 (S.D.1984).

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990).

This court has adopted a standard to determine whether a police officer has a reasonable basis for a traffic stop.[2]

Consistent with the principles set out in *Terry v. Ohio* (citation omitted), *the officer must have a specific and articulable suspicion of a violation before the stop will be justified.*

[*Marben v. State, Dep't Public Safety* ], 294 N.W.2d [697] at 699 [Minn.1980] (emphasis supplied).

The standard, which we will define as the reasonable suspicion standard, was more precisely defined in *People v. Ingle*, 36 N.Y.2d 413, 369 N.Y.S.2d 67, 330 N.E.2d 39 (1975). Discussing the standard, the court said:

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal.... All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

36 N.Y.2d at 420, 369 N.Y.S.2d at 74, 330 N.E.2d at 44 (citation omitted).

*State v. Anderson*, 331 N.W.2d 568, 570 (S.D.1983) (quoting *Marben v. State, Dep't of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980)).

■ Both the United States Supreme Court and this court have held that reasonable cause for a stop may be supplied by information acquired from another person rather than based upon an officer's personal observations. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Anderson*, 359 N.W.2d 887 (S.D.1984). Further, the information provided by an anonymous telephone tip may be sufficiently reliable to justify a *Terry* stop. *White*, 496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 309; *United States v. McBride*, 801 F.2d 1045, 1047 (8th Cir. 1986).

■ We agree that a prediction of future behavior, when corroborated by law enforcement observation, may give rise to adequate reasonable suspicion to support a *Terry* stop. The decision of the United States Supreme Court in *White* is similar to the standard this court adopted in 1986. *State v. Schultz*, 409 N.W.2d 655 (S.D. 1987) (details verified by officers' observation supported investigatory stop); *State v. Czmowski*, 393 N.W.2d 72 (S.D.1986) (an anonymous tip corroborated by other details may serve as a sufficient basis on which to uphold a stop). The question in Lownes' case thus becomes one of determining whether the anonymous tip possessed a sufficient degree of reliability to create reasonable suspicion for law enforcement to make a valid *Terry* stop.

■ Courts have distinguished citizens who give information to the police of their own volition from those who are commonly thought of as informants. Citizen tips are more likely to be reliable than information from informants; "the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable that one who supplies information on regular basis." *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *See also State v. McCloskey*, 453 N.W.2d 700, 703–04 (Minn.1990); *Marben*, 294 N.W.2d at 699.

In *Alabama v. White*, an unknown informant telephoned police and claimed that

---

**2.** We have previously applied this standard in other factual situations. *See State v. Soft*, 329 N.W.2d 128 (S.D.1983); *State v. Boardman*, 264 N.W.2d 503 (S.D.1978).

the defendant would be leaving a specific apartment building at a particular time in a brown Plymouth station wagon with the right taillight broken, that she would be in possession of cocaine in a brown attache case and proceed to a certain motel. Police went to the apartment building, saw the defendant get into the described automobile and stopped her enroute to the named motel. In upholding the defendant's conviction for possession of cocaine and marijuana, the Court determined information must be viewed under the "totality of the circumstances" when evaluating whether reasonable suspicion exists. *White*, 496 U.S. at 330, 110 S.Ct. at 2416, 110 L.Ed.2d at 309 (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628 (1981)). What the Court found persuasive in *White* was the "ability to predict *future behavior*." *White*, 496 U.S. at 332, 110 S.Ct. at 2418, 110 L.Ed.2d at 311.

> Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities [citation omitted]. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify a stop.

*Id.* Other courts have adopted a similar standard. *Ex parte Carpenter*, 592 So.2d 627 (Ala.1991); *Commonwealth v. Bakoian*, 412 Mass. 295, 588 N.E.2d 667 (1992); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992); *State v. Chavez*, 240 Neb. 538, 483 N.W.2d 122 (1992); *Simone v. Damare*, 595 So.2d 281 (Fla.App.1992).

■ Trooper Welch received specific information relayed from a concerned citizen about a suspected violation of the law. The information included a description of a distinctive motorcycle, the name of the driver, the location the motorcycle left from, a direction and highway route for the motorcycle, the particular exit the bike would use to exit the highway and a specific street destination. When the officer looked for a motorcycle matching the given description, driven by a man, proceeding down the indicated highway in the direction predicted—he found it. After Trooper Welch verified significant aspects of the information, there existed adequate reasonable suspicion to justify a *Terry* stop.

We find the trial court did not err in denying Lownes' motion to suppress evidence derived from the stop of the motorcycle. *Smith*, 477 N.W.2d at 31; *Pfaff*, 456 N.W.2d at 560.

## II. THE TRIAL COURT DID NOT ERR IN ADMITTING THE RESULT OF LOWNES' BLOOD TEST AT TRIAL WHEN THE CHEMIST WHO PERFORMED THE ANALYSIS DID NOT TESTIFY AT THE PRELIMINARY HEARING.

Lownes claims admission of the affidavit of Dr. Looyenga at the preliminary hearing violated the rules of evidence and violated his constitutional right to confront a witness against him.

■ A magistrate's determination regarding the existence of probable cause will not be disturbed unless a clear abuse of discretion is shown. *State v. Olsen*, 462 N.W.2d 474 (S.D.1990); *State v. Oakie*, 311 N.W.2d 45 (S.D.1981); *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336 (1983) *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). "In preliminary hearings the magistrate's discretion is increased, in part, because the burden of persuasion is light." *Oakie*, 311 N.W.2d at 46; *People v. Washington*, 84 Mich.App. 750, 270 N.W.2d 511 (1978); *State v. St. Arnault*, 114 N.H. 216, 317 A.2d 789 (1974); *People v. Quinn*, 183 Colo. 245, 516 P.2d 420 (1973).

■ SDCL 23A–4–6 requires the magistrate to determine if "from the evidence it appears that there is probable cause to believe that an offence has been committed and that the defendant committed it[.]" The burden is on the state to introduce evidence tending to show probable cause exists. *Olsen*, 462 N.W.2d at 476; *Oakie*, 311 N.W.2d at 46. The suffi-

ciency of evidence the state must introduce is lower at a preliminary hearing than at trial. *Oakie*, 311 N.W.2d at 46. The burden is satisfied when the state produces "sufficient evidence to justify further inquiry by a trial." *State v. Lohnes*, 432 N.W.2d 77 (S.D.1988).

■ We determined in *Oakie* that the rules of evidence apply in preliminary hearings. *State v. Conner*, 453 N.W.2d 617 (S.D.1990); *Oakie*, 311 N.W.2d at 46. However, we went on to hold that "preliminary hearings are not trials, nor are they constitutionally guaranteed." *Id.* A defendant's constitutional rights will be fully protected if the case goes to trial. *Conner*, 453 N.W.2d at 619 (affidavit of State Health Lab admitted at preliminary hearing did not violate right to confrontation as defendant has right to confront witness at trial.) Lownes exercised his constitutionally guaranteed opportunity to confront Dr. Looyenga at trial; therefore, his constitutional rights were not violated by the admission of Dr. Looyenga's affidavit at the preliminary hearing.

■ Lownes further asserts Dr. Looyenga's affidavit was inadmissable hearsay under the rules of evidence. We held in *Conner* that an affidavit from the State Health Laboratory fell under the hearsay exceptions of SDCL 1–49–6 and SDCL 23–3–19.3 and should have been admitted at a preliminary hearing. 453 N.W.2d at 619.

SDCL ch. 1–49 creates and sets forth the duties of the office of laboratory services. SDCL 1–49–1[3] requires the board of regents to cooperate in performing services for executive branch agencies. Control of our public post secondary institutions is vested in the state board of regents. SDCL ch. 13–49. This includes the South Dakota School of Mines & Technology. SDCL ch. 13–60. The South Dakota Highway Patrol is an executive agency under the department of commerce and regula-

tion. SDCL ch. 32–2. SDCL 1–49–6 provides:

A copy of the results of any examination or analysis of any product or article by the director of laboratories duly authenticated by the analyst, is prima facie evidence in all courts of the matters and facts therein contained.

Therefore, under SDCL 1–49–6, the report from the laboratory at SDSM & T falls under the hearsay exception of an analysis performed under the auspices of the office of laboratory services under SDCL 1–49–1 and is prima facie evidence admissible in all South Dakota courts.

## III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING THE BLOOD TEST RESULT AT TRIAL WHEN LOWNES DID NOT ESTABLISH A BREAK IN THE CHAIN OF CUSTODY.

■ The trial court has great discretion regarding the competency of chain of custody evidence. *State v. Wimberly*, 467 N.W.2d 499 (S.D.1991); *State v. Miller*, 429 N.W.2d 26 (S.D.1988) *habeas corpus granted on other grounds*, Civ. No. 91–1017 (D.S.D. March 24, 1993). We will only disturb the trial court's ruling on admission of evidence if an abuse of discretion has occurred. *State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991); *Pfaff*, 456 N.W.2d at 560. Mere suspicion or speculation is insufficient to establish a break in the chain of custody. *Miller*, 429 N.W.2d at 39. The state must demonstrate with reasonable probability that no tampering or substitution has occurred, however it need not negate every possibility of tampering or substitution. *Wimberly; Miller.* In *State v. Iron Necklace* we stated:

The 'chain of custody' rule, requires the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to its offer at trial ... In *Serl*, we further said that it was not necessary to

---

**3.** SDCL 1–49–1 provides:

There is created an office of laboratory services. The provisions of this chapter do not limit the authority and responsibilities of institutions under the board of regents from conducting laboratory training, research and scientific investigations independent of the office. However, the board of regents shall cooperate and coordinate with the office in implementing performance standards and laboratory efficiencies in providing services for executive branch agencies.

establish an absolutely perfect chain of custody, but rather one which strongly suggests the exact whereabouts of the exhibits during that period of time. *State v. Iron Necklace*, 430 N.W.2d 66, 81 (S.D.1988) (quoting *State v. Serl*, 269 N.W.2d 785, 789 (S.D.1978)).

 Testimony at trial established that technician Jennifer Jordan drew the sample from Lownes, noted the date, time and Lownes' name on the blood alcohol data card and gave the card to Trooper Welch. Welch in turn filled out part of the data card which Jordan then wrapped around the blood sample and sealed in a cardboard tube. Welch then locked the evidence in the box at the jail. Both Jordan and Welch testified at trial the sample with its card was the one taken from Lownes on the night of May 8, 1991.

Dr. Looyenga testified the evidence was picked up at the jail on May 13, 1991, given to him and had been in his possession from that date until the morning of trial. He identified the sample at trial as one submitted by Welch that he had tested for blood alcohol.

Lownes has established no evidence of tampering, substitution or contamination of the sample. Testimony established the whereabouts of the sample from the time it was drawn to its introduction at trial. The only inconsistency is Jordan's mistake in noting the incorrect military time on the data card. At trial she testified she has difficulty in computing military time and that the actual time was 8:30 rather than the incorrectly noted 18:30 hours. Trooper Welch confirmed the time was 8:30 P.M. or 20:30 military time.

Mere speculation is insufficient to break the chain of evidence. *Miller*. The trial court did not abuse its discretion in admitting the blood test.

IV. THE TRIAL COURT DID NOT ERR IN FAILING TO STRIKE LOWNES' PRIOR CONVICTIONS AS THEY WERE NOT OBTAINED IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.

 In *Boykin v. Alabama*, the United States Supreme Court required that before a court accepts a guilty plea it must make a determination on the record that the defendant is voluntarily, intelligently and knowingly pleading guilty. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Waiver requires a knowing relinquishment of the right against self-incrimination, the right to confrontation and jury trial and an understanding of the nature and consequences of the plea. *Stuck v. Leapley*, 473 N.W.2d 476, 477 (S.D.1991). Where the record does not show a knowing waiver of constitutional rights, the conviction is presumptively unconstitutional. *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1711–12, 23 L.Ed.2d at 279.

 The recent Supreme Court case of *Parke v. Raley*, 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) held that *Boykin's* presumption of invalidity would not be applied in collateral attacks on a final judgment. *Parke*, 506 U.S. at ——, 113 S.Ct. at 523–24, 121 L.Ed.2d at 404. Lownes' challenge to his previous convictions is such a collateral attack. *See Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 921, 63 L.Ed.2d 198 (1980). Therefore, under *Parke*, silent records would not create a presumption Lownes' prior convictions were unconstitutional.

 However, it is clear from a review of the records that there was formal and valid waiver of Lownes' *Boykin* rights on each of his prior convictions. In the first two convictions, Lownes signed a three-page statement which enumerated all *Boykin* rights. Additionally, the courts ascertained that Lownes both understood and desired to waive his *Boykin* rights and his right to an attorney.

When Lownes pled guilty to his third DUI, he was represented by counsel. The record shows the court again advised him of all his *Boykin* rights and received an affirmative response as to waiver.

The State has shown the existence of valid prior convictions. Lownes has failed to show any evidence they were obtained in violation of *Boykin*. The trial court did

not err in failing to strike Lownes' former convictions.

We affirm.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.