#24497-a-JKM

**2007 SD 130**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CITY OF BROOKINGS, SOUTH DAKOTA,  Plaintiff and Appellee,

v.

DONNA RAMSAY, dba DHR DESIGN
SERVICES, LTD.,  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON R. ERICKSON
Judge

* * * *

STEVEN J. BRITZMAN  Attorney for plaintiff
Brookings, South Dakota  and appellee.

MICHAEL S. MCKNIGHT
CHARLES A. LARSON of
Boyce, Greenfield, Pashby & Welk, L.L.P.  Attorneys for defendant
Sioux Falls, South Dakota  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 1, 2007

OPINION FILED **12/19/07**

MEIERHENRY, Justice

[¶1.] Donna Ramsay (Ramsay), d/b/a DHR Design Services, Ltd. was convicted of three municipal ordinance violations. She was convicted of unauthorized construction of a structure on a public sidewalk, failure to obtain a building permit and violation of a stop work order. Ramsay filed a motion for a new trial, which the circuit court denied. Ramsay appeals. We affirm.

## FACTS

[¶2.] The charges against Ramsay stem from remodeling and renovations she was making to a historic building in downtown Brookings, SD. The building is referred to as the Old City Hall and Old Fire Hall. Ramsay began the interior remodeling in 2000. Later, as part of the construction, Ramsay built a deck on one of the building's several entrances. The deck was elevated approximately forty inches above the public sidewalk and extended over the sidewalk 1.5 feet. All of the charges against Ramsay involve the non-compliance of the deck with the City building code and her failure to discontinue construction of the deck after the issuance of a stop work order.

[¶3.] In 2000, Ramsay obtained a building permit from the City of Brookings. The City claimed the 2000 permit was valid for interior remodeling only. Ramsay testified that she believed the permit also included plans for the outside deck. After working on the interior renovations to the building, Ramsay began construction of the deck in September, 2004. She contacted the City of Brookings Building Services Administrator, Gregory Miller, to inspect the deck structure prior to completion. Miller observed that the deck was protruding into the

public sidewalk area. Protrusions into public right-of-ways are prohibited by the City code. Miller returned to his office and reviewed Ramsay's 2000 building permit. He concluded that the 2000 permit for interior remodeling did not cover the non-attached external deck. He advised Ramsay that she needed to apply for a separate building permit for the deck. Ramsay went to City Hall on September 15, 2004, to complete the paperwork. At that time, the City Engineer told Ramsay that a new permit would not be approved if her building plan showed that the deck would protrude onto the sidewalk. Ramsay's only recourse was to request a variance from the City Council.

[¶4.]     Ramsay brought her petition for a variance before the Brookings City Council on October 12, 2004. She was instructed by the Council to return on October 26, 2004. The City Council neither granted nor denied Ramsay a variance. The City Council passed a motion "to instruct the city manager and staff to define approval criteria in regards to encroachments in the public right-of-way." The City approved Resolution No. 68-04 setting forth nine criteria for building in the public right-of-way on November 23, 2004.

[¶5.]     Ramsay was unable to meet the newly adopted criteria despite efforts to do so. Thus, she did not obtain a permit or variance for the deck. Nevertheless, she continued to build the deck without a permit. The City Engineer sent several letters to Ramsay informing her of the necessity of obtaining a permit. Ramsay acknowledged that she received the letters but failed to respond to them. In June, 2005, the City issued a stop work order. Ramsay continued construction of the deck after the issuance of the stop work order. The City later filed charges against

Ramsay alleging that she had violated City Ordinances by 1) unauthorized construction of a structure on a public sidewalk, 2) construction without a building permit, and 3) construction in violation of a stop work order. Ramsay argued that the City should be estopped from bringing charges against her. She claims that an employee from the City zoning and building department had worked with her in the earlier stages of the building project and that he had not told her of the necessity of getting a separate permit for the deck. The circuit court found Ramsay guilty of the charges. Ramsay appeals. She claims the circuit court erred on two grounds: (1) in convicting her when there was insufficient evidence to warrant the convictions, and (2) in denying her Motion for a New Trial.

*Insufficiency of Evidence -- Estoppel*

[¶6.]        Ramsay argues the court erred in convicting her because there was insufficient evidence to warrant the convictions. In reviewing "the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the [trier of fact], is sufficient to sustain a finding of guilt beyond a reasonable doubt." State v. Bordeaux, 2006 SD 12, ¶6, 710 NW2d 169, 172 (citation omitted).

[¶7.]        Ramsay's insufficiency of the evidence claim relies on her estoppel defense. She claims that the City was estopped from denying that the 2000 building permit covered the construction of the deck; thus, the prosecution failed to meet the elements of the charges against her. Ramsay claims that the previous City Building Services Administrator, Ray Froelich, worked with her and advised her on the building renovations over the years and had not told her she needed a

#24497

separate permit for the deck or that the deck did not comply with the building code. Froelich was not called as a witness by either the City or Ramsay. Ramsay also claimed that the configuration and placement of the deck was necessary to meet requirements of the American Disabilities Act, Fire and Life Safety Codes and the South Dakota State Historical Preservation Office. Ramsay argues Froelich's actions induced her to alter her position and to proceed with the construction of the deck.

[¶8.] We have recognized the doctrine of equitable estoppel against municipalities in our prior cases. *See* Even v. City of Parker, 1999 SD 72, ¶9, 597 NW2d 670, 674; City of Rapid City v. Hoogterp, 85 SD 176, 179, 179 NW2d 15, 16 (1970); Tubbs v. Custer City, 52 SD 458, 218 NW 599, 601 (1928); City of Deadwood v. Hursh, 30 SD 450, 138 NW 1122, 1123 (1912); Missouri River Tel. Co. v. City of Mitchell, 22 SD 191, 116 NW 67, 68 (1908). We explained the estoppel doctrine as follows:

> When considering the application of equitable estoppel, each case is dependent on application of the doctrine to the specific facts. When applying the doctrine to municipal corporations in matters pertaining to their governmental functions. . . . [t]he basis of its application . . . is . . . municipal officers . . . have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts. More than municipal acquiescence . . . should be required to give rise to an estoppel. The conduct must have induced the other party to alter his position or do that which he would not otherwise have done to his prejudice.

*Even,* 1999 SD 72, ¶12, 597 NW2d at 674 (internal citations omitted).

[¶9.] We also said we only apply estoppel against public entities in "exceptional circumstances to 'prevent manifest injustice.'" *Id.* at ¶11 (citations

-4-

omitted). "The burden of establishing that such exceptional circumstances are present is on the party seeking the protection of the doctrine." *Hoogterp*, 85 SD at 180, 179 NW2d at 17. "[E]ach case is dependent on application of the doctrine to the specific facts." *Even*, 1999 SD 72, ¶12, 597 NW2d at 674. Our "scope of review as to whether an equitable estoppel exists is fully reviewable as a mixed question of law and fact." *Id.* ¶9.

[¶10.]        Ramsay argues that estoppel applies because her situation was similar to the facts in *Even v. City of Parker*. *Id.* ¶¶2-6. In *Even,* we held that the City of Parker was estopped from denying the existence of a building permit for a pole-type garage granted to Mr. Even. In that case, Even applied for a building permit. He specified that he had purchased materials for a pole-type garage unit. The City granted the request. Four days later, the City discovered that it granted the permit in error because the pole-type garage units were not permitted by City ordinance. The City revoked Mr. Even's permit and denied his reapplication for a new permit. We affirmed the circuit court's finding that the City was estopped from denying Mr. Even's permit. We determined in *Even* that the City did not have a duty to tell Even that his structure would not comply with the zoning ordinance, but did have a duty not to create the impression of compliance and then withdraw approval after Even had started to build the facility. *Id.* ¶14. We said,

> The City did not have a duty to call to Even's attention the fact he could not build a garage of pole type construction under the terms of the zoning ordinance. Nevertheless, the City may not, through its agents, affirmatively create an objectively reasonable impression in an applicant that he has fully complied with all zoning requirements and then proceed to withdraw permission after the applicant has taken steps towards

> construction which result in a substantial detriment to the applicant.

*Id.* ¶14 (citations omitted).

[¶11.] Ramsay argued that Froelich worked with her for four years without notifying her that the 2000 building permit did not allow construction of the deck. She further claimed that Froehlich was actively involved in the project and consulted with her regularly. She claimed Froelich required her to make costly changes and additions to the building in order to comply with ADA and Fire and Life Safety Codes. Froelich was not called to testify, allegedly because he had retired. The only evidence concerning whether Froehlich gave Ramsay "an objectively reasonable impression" that she had "fully complied with all zoning requirements" came from Ramsay's own testimony. She admits, however, that the plans for the deck had changed from the original drawing submitted with the 2000 permit application. Her testimony concerning Froehlich's involvement centered more on his advice on how to comply with ADA and Fire and Life Safety Codes. In fact, her testimony seemed to indicate that the deck had not actually been approved by Froehlich because she testified that she started construction on the deck sometime after Froehlich retired. Ramsay testified that she initiated inspection of the deck after she started building it in September of 2004. Miller, the employee who inspected the deck, informed Ramsay that she needed to get a permit because the 2000 permit did not include construction of the deck. At that time, she did not disagree that she needed a permit and proceeded to apply for one.

[¶12.] The trial judge ruled that the 2000 building permit only covered internal furnishing or remodeling. The court found that under the law, Ramsay

was required to get a second permit for the deck. The court also denied the estoppel claim finding that because Ramsay's building permit did not cover the deck construction, the City had no duty and could not be equitably estopped from asserting the need for a second building permit. Although the court's comments on the record as to estoppel are brief, we cannot say his conclusion on the issue was in error. Ramsay bore the burden to bring forth facts necessary to establish that the City (through its agent Froehlich) had created "an objectively reasonable impression" that Ramsay's deck plans had fully complied with the building code. Her own testimony does not support such a finding. Although she may not have realized she needed a second permit for the deck, she sought inspection from the City before she finished the deck. At that point, Miller told her she needed a second permit because the deck was not attached to the building. It was when she attempted to acquire the second permit that her problems began. What happened after that is not in dispute. The City never granted her the permit for the deck. She admitted she continued to build the deck without the permit and in disregard of the stop work order.

[¶13.] Despite Ramsay's contention, the 2000 building permit on its face was limited to the interior remodeling of the building. Neither the building permit nor any other evidence indicates that the City induced Ramsay to begin construction on the exterior deck. Since the City's conduct did not induce Ramsay to alter her position before beginning and proceeding with construction of the deck, Ramsay's equitable estoppel defense fails. The circuit court did not err in concluding the City

was not estopped from denying the existence of a valid building permit for exterior construction.

*Motion for a New Trial*

[¶14.]    Ramsay also claims that the circuit court erred by not granting her motion for a new trial. We review denials of motions for a new trial under an abuse of discretion standard. State v. Gehm, 1999 SD 82, ¶12, 600 NW2d 535, 539.

[¶15.]    Ramsay moved for a new trial pursuant to SDCL 15-6-59(a)(6). This statutory provision provides that a new trial may be granted if the evidence is insufficient to justify the verdict or if the verdict is against the law. Ramsay argues the circuit court abused its discretion because (1) the court lacked jurisdiction over the case because the City failed to exhaust the administrative remedies; and (2) the court impermissibly required Ramsay to comply with a retroactive City ordinance.

[¶16.]    Ramsay argues the circuit court lacked subject matter jurisdiction because the City failed to exhaust its administrative remedies prior to filing the criminal complaints. Without subject matter jurisdiction, any decision rendered by the court is void. *See* Barnes v. Matzner, 2003 SD 42, ¶10, n2, 661 NW2d 372, 375, n2. "Failure to exhaust administrative remedies where required is a jurisdictional defect." S.D. Bd. of Regents v. Heege, 428 NW2d 535, 539 (SD 1988).

[¶17.]    Ramsay argues the City could not file criminal charges against her until the City Council made a final determination on her petition for a variance. Ramsay cites two cases in support of her argument from other jurisdictions that have held that the pending administrative proceedings are fatal to a prosecution under these circumstances and deprive the circuit court of jurisdiction. She cites

City *of Woburn v. McNutt Bros. Equipment Corp.*, 451 NE2d 437 (MassCtApp 1983) and *State v. Anonymous*, 413 A2d 134 (ConnSuperCt 1980). Both cases are distinguishable. The holdings of the cases are based on state statutory provisions requiring the government to exhaust administrative remedies before bringing criminal sanctions because the illegality of the defendants' acts was contingent upon the outcome of the administrative proceedings. In both *Woburn* and *Anonymous,* Massachusetts and Connecticut state administrative procedure codes provided for exhaustion of remedies by city and local governments.

[¶18.]     Unlike the law in Massachusetts and Connecticut, the South Dakota Administrative Procedures Act excludes cities. It applies to agencies but in the Act's definition of "agency", SDCL 1-26-1(1), "any unit of local government" is specifically excluded. SDCL 1-26-30.[1] Under South Dakota law, the City was not required to exhaust administrative remedies. Thus, the circuit court had subject matter jurisdiction over the criminal action.

[¶19.]     Ramsay also claimed in her Motion for a New Trial that the circuit court lacked jurisdiction because the Amended Judgment of Conviction required

---

1.     *Compare* GL c 40A, § 7 ("No action, suit, or proceeding shall be maintained in any court . . . except in accordance with the provisions of this section") where the *Woburn* court stated "GL c 40A, § 7 requires that local administrative remedies, if available be exhausted before judicial relief is sought; and Conn. Gen. Stat. s 47a-68 (establishing administrative remedies) where the court in *Anonymous* held [a] [prosecution based upon municipal code violations requires compliance with the procedural due process requirements of the code" as applied to cities*; with* SDCL 1-26 30 providing: "A person who has exhausted all administrative remedies available within any agency or a party who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter . . . ." *See* SDCL 1-26-1(1) (excluding local governments from definition of agency).

Ramsay to comply with the City's subsequently adopted criteria for a variance (Resolution No. 68-04) in order for her fines to be suspended.[2] Ramsay argues that she should only be required to comply with the laws in place at the time she applied for the permits.

[¶20.] Ramsay claims that because Resolution 68-04 was not passed until October 26, 2004, the court erred in requiring compliance with the ordinance in order for her fines to be suspended. Ramsay, however, cites no authority to support her argument that an erroneous sentence provision entitled her to a new trial. Ramsay's argument is directed at a provision of the court's suspended sentence rather than any trial error. The City's subsequently adopted criteria in Resolution 68-04 were not the basis of her charges nor did they enter into the court's finding of guilt. The court merely gave Ramsay the option of complying with the ordinance in his sentencing order. If Ramsay could comply with the criteria in Resolution 68-04, then the court would not impose her fines. Thus, we find no merit in her request for a new trial based on the sentencing provision.

[¶21.] Ramsay also alleges that the City passed the ordinance in bad faith. She cites examples of other Brookings residents who were previously granted building permits allowing encroachments onto public rights-of-way. At the time of Ramsay's original application and the variances granted to other residents, the City had no established criteria for granting encroachments onto public rights-of-way.

---

2.  Ramsay's basis for her motion for a new trial is lack of subject matter jurisdiction. However, if the court lacks jurisdiction to hear the matter, then a motion for a new trial would not be the appropriate remedy because the court would lack jurisdiction upon remand as well.

Again, Ramsay cites no applicable authority requiring a new trial under these circumstances, even presuming the bad faith allegations were true.[3]

[¶22.]     Therefore, the circuit court did not abuse its discretion in denying Ramsay's motion for a new trial. We affirm the circuit court on all issues.

[¶23.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

3.     Ramsay cites one case in support of her argument. Whitehead Oil Co. v. City of Lincoln, 515 NW2d 390, 397 (Neb 1994) (holding new ordinances enacted in bad faith cannot be retroactively applied). However, the facts of this case are distinguishable, and further, do not support granting a new trial when the retroactive ordinances were not a basis of guilt.