#24543-a-JKM
**2008 SD 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GETTYSBURG SCHOOL DISTRICT
53-1,                                                        Plaintiff and Appellee,

    v.

HELMS AND ASSOCIATES,
a division of SCHUMUCKER, PAUL,
NOHR and ASSOCIATES, INC.,                    Defendants,

    and

BITUMINOUS PAVING, INC.,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
POTTER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JAMES W. ANDERSON
Judge

* * * *

KENNETH E. BARKER
MICHAEL TRUMP of
Barker Wilson Law Firm, LLP              Attorneys for plaintiff
Belle Fourche, South Dakota              and appellee.

RONALD G. SCHMIDT of
Schmidt, Schroyer, Moreno,
 Lee & Bachand, PC                       Attorneys for defendant
Rapid City, South Dakota                 and appellant.

* * * *

ARGUED ON FEBRUARY 13, 2008

OPINION FILED **04/30/08**

#24543

MEIERHENRY, Justice

[¶1.] Bituminous Paving, Inc. (Bituminous) appeals from a jury verdict in favor of the Gettysburg School District (District) for faulty construction of an outdoor track. We affirm.

[¶2.] The District entered into a contract with Bituminous for the construction of an outdoor track and with Helms and Associates (Helms) for engineering services of designing and inspecting the construction of the track. Bituminous' contract with the District required Bituminous to remove the old track, prepare the base of the new track, and lay the asphalt running surface. Bituminous appeared to have completed the project by the required deadline of September 2002; however, unknown to the District, Bituminous had failed to adequately compact the soil sub base and gravel layer that was designed to support the asphalt top. Defects developed within a few weeks of the track's completion. The District's athletic director and track coach reported noticeable construction problems and safety concerns with the track including uneven lanes and depressions in the surface. A school board member additionally observed cracking asphalt and "pop-outs." By October 22, 2002, Helms wrote Bituminous with concern about the cracking of the asphalt and with a directive that the cracking be examined in the spring.

[¶3.] The following spring, Helms provided Bituminous a punch list of needed repairs to the track. The needed repairs included fixing depressions in the asphalt, uneven surface cracking, and areas that held water. Bituminous finished its repair work in August of 2003; however, the repair work did not fix the problems and arguably made them worse. Thereafter, Bituminous' project manager offered to

re-repair the defective areas. Helms followed up with a letter to the District on April 1, 2004, proposing how Bituminous should address the known surface deficiencies in the track. At its April board meeting, in response to Helms' proposal, the District discussed its frustration with the year-and-a-half delay in completion of the track repairs. Later, representatives of Helms, the District, and Bituminous met and inspected the track. The District conditionally accepted Helms' proposal for the completion of the re-repair work on the track surface, including arrangements for payment. Helms memorialized the agreement on May 25, 2004. Thereafter, Helms directed Bituminous to complete five specific work items between May 27 and August 15, 2004.

[¶4.] In the meantime, the District met with Sam Fisher, a certified track builder and owner of Fisher tracks, to inspect the track's defects on June 7, 2004. On June 10, 2004, Fisher faxed two reports to the District that raised concerns about whether the needed re-repair work set forth in Helms' letter to Bituminous would address the track's underlying structural defects. According to Fisher, trying to fix or patch the track's structural faults would be nearly impossible.

[¶5.] Reacting to Fisher's concerns, the District's Superintendent contacted and instructed Bituminous not to return to the track and not to perform its proposed "re-repair" work. On August 8, 2005, the District officially rescinded the "re-repairs" agreement with Bituminous and voted to bring an action against both Helms and Bituminous because of the defective repairs and underlying structural defects.

[¶6.]     The District retained two experts, Fisher and Chunhua Han, PhD PE (a paving expert). After a closer inspection, Fisher and Han determined that the track's defects were both structural and material. Structurally, the ground base material and subsequent top layers of asphalt were unevenly laid and compacted. Also, in several locations, the track sloped opposite of the designed slope direction, allowing water to pool improperly and accumulate. The asphalt also failed to meet material specifications. It contained shale-like material that caused "pop-outs" or holes along the surface that allowed water to pool up to three-quarters of an inch in depth. The overall condition of the track caused the Board to be concerned about the students' safety.

[¶7.]     The District settled its claims against Helms prior to trial. At trial, the jury determined that Bituminous breached its agreement with the District, negligently constructed the track, breached express or implied warranties and breached its duty of good faith to the District. The jury found that the District had been damaged in a total amount of $215,500, allocating 70% liability to Bituminous. The jury also awarded prejudgment interest on $182,000 of the District's damages, beginning July 1, 2004. In post trial motions, the trial court granted the District's motions for apportionment of prejudgment interest, statutory costs, disbursements and attorneys' fees against Bituminous. The judgment against Bituminous totaled $278,450 (including costs and prejudgment interest). Bituminous appeals raising several issues.

### 1. Bituminous claims that the District's breach of contract claim is barred, estopped and/or waived because the District failed to satisfy conditions precedent in the contract.

[¶8.]    Bituminous contends that the District should be barred from bringing a claim because (a) the District failed to plead that the conditions precedent were satisfied, (b) the District failed to provide Bituminous proper notice of defects, and (c) the District failed to seek a decision from the engineer or wait for "substantial completion" of the project before seeking court action.  Bituminous also argues that the District's failure to meet these conditions precedent constituted waiver and estoppel.

*a. Failure to plead that conditions precedent were satisfied*

[¶9.]    Bituminous claims that the District should not be permitted to sue on the contract because, as required by SDCL 15-6-9(c), it failed to plead that all conditions precedent were satisfied.  Bituminous, however, did not raise this issue to the trial court, and we will not consider it for the first time on appeal.  Hall v. State *ex rel.* South Dakota Dep't of Transp., 2006 SD 24, ¶12, 712 NW2d 22, 26 (stating "[w]e have repeatedly stated that we will not address for the first time on appeal issues not raised below") (citations omitted).

*b. Failure to give proper notice of defects*

[¶10.]    Bituminous claims that the District did not provide Bituminous with contractually required seven (7) days written notice[1] of defects in the track prior to

---

1.    Bituminous also claims that other Articles in their contract requiring notice were not adhered to by the District.  However, the contract provides for and supports a number of different methods of seeking remedies and fulfillment of the contract.  The District properly applied the procedures of Article 13;

(continued . . .)

bringing a lawsuit for its defective work. The record shows that Bituminous did receive written notice from Helms of the known defects as early as October 22, 2002. In response to the notice, Bituminous attempted to fix the defects, but was unsuccessful. Helms then provided yet another written re-repair list. However, when the District sought another opinion from Fisher, it discovered that Helms' list of repairs was inadequate and only addressed surface problems and that the track would need to be rebuilt. Bituminous claims that it technically should have been provided written notice of *all* the defects that the District learned from Fisher before the District brought a lawsuit. Bituminous' notice argument is without merit. Under the terms of the agreement, Bituminous was sufficiently provided notice of the known defects and had the opportunity to correct them. Although additional defects later became apparent to the District, they were not obligated to amend the previous notices of defects. Indeed, the totality of defects did not become fully known to the District until the discovery phase of litigation.

[¶11.] Moreover, although Bituminous veils this issue under notice grounds, the heart of its argument is that Bituminous was not allowed the opportunity to complete the project.[2] Bituminous presented this exact defense to the jury. Indeed, Bituminous proffered and the court instructed on this exact issue as follows:

_____

(. . . continued)
   therefore, we need not discuss whether other notice requirements were met for irrelevant portions of the contract.

2.   During oral arguments, when questioned about how the purported lack of notice prejudiced Bituminous, Bituminous responded that if the District/Helms would have provided the seven days notice Bituminous would

(continued . . .)

> You are instructed that Plaintiff Gettysburg School District 53-1 is not entitled to be compensated for work that remained unfinished if you find that Bituminous Paving, Inc. was willing to perform such work but was ordered off the job and not allowed to complete such work.

Obviously, based on this instruction, the jury considered whether Bituminous was provided the opportunity to complete the project as contracted. The quoted instruction plainly directed the jury to offset damages that resulted from the District excluding Bituminous from the project, regardless of whether the exclusion was proper or improper. Furthermore, it is possible that the jury reduced Bituminous' liability because of this instruction. We presume that juries understand and abide by instructions. First Nat'l Bank of Minneapolis v. Kehn Ranch, Inc., 394 NW2d 709, 720 (SD 1986).

c. *Failure to seek engineer's decision or wait for "substantial completion"*

[¶12.]    Bituminous next claims that the District did not satisfy the condition precedent of seeking a decision from Helms prior to filing this suit, citing contract provision 9.09. Provision 9.09 made the engineer "the initial interpreter" of the contract requirements and "judge" of the work's acceptability. The provision required Helms to decide a dispute before either party could seek a remedy under the law. On at least two occasions, the District provided notice to Helms of deficiencies in the work. Helms, in turn, conveyed to Bituminous a decision/plan on what must be done to remedy the District's concerns. After the District learned

---

(. . . continued)
   have cured all of the track's defects within the seven days allotted by the contract.

that Helms' plan would not remedy the defects, the District decided to sever its relationship with both Helms and Bituminous and pursue legal remedies against both of them. Contract provision 13:09 gave the District the right to "exclude [Bituminous] from all or part of the Site, take possession of all or part of the Work and suspend [Bituminous'] service related thereto" "if [Bituminous] fails to perform the Work in accordance with the Contract Documents."

[¶13.]     The District followed the contract process in attempting to repair the defective track; however, after rejecting Helms' and Bituminous' plan to repair the track, the District was entitled to sue on the contract. Moreover, the District sued Helms for its negligence as well. The District had completely lost confidence in the work of Helms and Bituminous because all attempts to repair the track's defects had failed. The contract did not contemplate infinite opportunities to repair a structurally defective project that was scheduled for completion almost two years earlier. Nor did the contract require the District to submit its dispute to the engineer, who was also alleged to have breached the contract.

[¶14.]     Bituminous also claims that the contract required the District to obtain a certificate of completion from the engineer as a condition precedent to pursuing legal action. The District brought this action nearly three years after the initial completion date of the project and after the final payment had been approved. During that time, both Helms and Bituminous were provided ample opportunity to cure the defects and for Helms to issue or Bituminous to request a certificate of substantial completion. In fact, the contract charged Bituminous, not the District, with the responsibility to request a certificate of substantial

completion. Only after Helms' and Bituminous' attempts to repair the problems failed and the District realized that the track could not be repaired, did the District reject the work. Bituminous now clings to technical aspects of the contract in an attempt to set aside the adverse jury verdict. The basis of Bituminous' claims are insufficient to support dismissal of the District's breach of contract claim or implicate waiver or estoppel. Consequently, we affirm the verdict for the District on its breach of contract claim.

### 2. Bituminous claims that the negligence cause of action is barred because of the jury's apportionment of fault.

[¶15.] Bituminous claims that since the jury determined that Bituminous was responsible for 70% of the damages, the relative fault of the District must have been 30%, which as a matter of law is more than slight and a bar to the District's negligence claim.[3] The verdict form directed the jury first to answer "questions 1 through 4," which corresponded to each of the claims. Therefore, as to each claim (breach of contract, negligence, warranty, and good faith and fair dealing) the jury had to find for the District or Bituminous. In addition, the verdict form directed the jury as follows:

> If you answered in favor of Gettysburg School District on ANY of questions 1 through 4, please complete the following:
>
> 1. We find that Gettysburg School District has been damaged in the amount of $_____.
> 2. We find that Bituminous Paving is _____% responsible for Gettysburg School District's damage.

---

3. Bituminous cites the case of *Woods v. City of Crooks,* 1997 SD 20, 559 NW2d 558 for this proposition.

     3. We award Gettysburg School District prejudgment interest
       on $_____ from and after _____.

In answering the second question, the jury generally found Bituminous 70%
responsible for the damage.

[¶16.] In addition to instructing the jury on negligence and contributory
negligence, the court also gave instructions on the contract related claims. The
court instructed the jury to consider all claims or cross-claims against Helms as
follows:

> The District's claims against Helms have been settled prior to
> trial. Nevertheless, the cross-claim by Bituminous against
> Helms still remains and thus the jury must consider whether
> Helms is responsible for the defective track which the District is
> seeking civil damages, and if so, to what degree it is responsible.

Since the jury found in favor of the District on all of the claims, the general verdict
on percentage of responsibility is not tied to any particular cause of action. Thus,
the apportionment could be based on the relative responsibility between Helms and
Bituminous on the breach of contract claim or the relative fault between
Bituminous and the District on the negligence claim, or a combination of the two
claims. The fact that the jury found Bituminous responsible for 70% of the damages
does not necessarily equate to the District being 30% contributorily negligent. We
presume a general verdict is properly based on one or all of the presented theories.
We said in *Allen v. McLain* that "[a]s between proper and improper grounds or
theories, a general verdict will often be presumed to be based on that ground or
theory on which it can properly be sustained." 75 SD 520, 529, 69 NW2d 390, 395
(1955) (citation omitted). *See* Thomas v. Sully County, 2001 SD 73, ¶¶8-9, 629
NW2d 590, 592-93 (holding that the jury verdict must be upheld if it could be

sustained on one of the theories properly presented); Martinmaas v. Engelmann, 2000 SD 85, ¶72, 612 NW2d 600, 615 (Konenkamp, J., concurring) (stating that "when a jury returns a general verdict encompassing two or more issues and the verdict is supported by at least one issue, the case will not be reversed").

### 3. Bituminous claims that the verdict should be reversed because the verdict form was confusing and prejudicial.

[¶17.] Bituminous generally complains that the special verdict form was confusing and prejudicial when read in light of the related jury instructions for contributory negligence, comparative fault, and joint tortfeasor apportionment of fault.

[¶18.] Supreme Court Rule 49, codified in SDCL 15-6-49(a) allows for special verdicts. The rule on special verdicts provides in relevant part as follows:

> The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. . . .

SDCL 15-6-49(a). The use of a special verdict form is within the sound discretion of the trial court. Miller v. Hernandez, 520 NW2d 266, 270 (SD 1994). We review the decision to utilize a special verdict form under the abuse of discretion standard. *Id.* "Abuse of discretion refers to 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" *Id.* (quoting Kanta v. Kanta, 479 NW2d 505, 507 (SD 1991)).

[¶19.]    Bituminous first challenges the initial interrogatory in the verdict form, which questioned whether Bituminous had breached its agreement with the District. The court noted that Helms had settled out of court. The question stated as follows:

> 1.  Gettysburg School District claims that both Helms & Bituminous Paving breached their agreements with the Gettysburg School District. (Helms has settled out of court.)
>
> _____ We find that Gettysburg School District has proven its claim of breach of agreement against Bituminous Paving.
>
> (Check one)
>
> _____ We find that Bituminous Paving has not breached its agreement with Gettysburg School District.
>
> . . . .

Bituminous also challenges the second special interrogatory, which stated as follows:

> 2.  Gettysburg School District claims that Helms and Bituminous Paving were negligent in the design and/or construction of the Gettysburg track. (Helms has settled out of court).
>
> _____ We find that Gettysburg School District has proven its claim of negligence against Bituminous Paving. (Or we find that Gettysburg School District's negligence was slight or less than slight as compared to any negligence of Bituminous Paving and have adjusted our award of damages accordingly.)
>
> (Check one)
>
> _____ We find that Bituminous Paving was not negligent in the construction of the Gettysburg track.
>
> . . . .

The court further instructed that if the jury found in favor of the District on any of the claims, the jury was to designate Bituminous' percentage of responsibility. Bituminous complains that these special interrogatories did not permit the jury to determine if Helms was negligent or if the District was contributorily negligent.

[¶20.] Although there was no space on the verdict form for the jury to designate whether Helms or the District were negligent or contributorily negligent, the trial court properly instructed the jury on these aspects of the law in other instructions. The trial court also instructed the jury to allocate degrees of fault between the co-defendants, Helms and Bituminous, as well as the contributory negligence of the District. Here, the court required the jury to return a finding on each cause of action in addition to a general verdict determining the District's damages and Bituminous' percentage of responsibility for those damages.

[¶21.] The court's jury instructions, as a whole, adequately explained and instructed the jury on how to answer the interrogatories. Therefore, considering all of the jury instructions along with the verdict form, it is apparent that the trial court correctly instructed on the law and that the verdict form was neither confusing nor prejudicial.[4] *See Kehn Ranch, Inc.*, 394 NW2d at 720 ("The jury was

---

4. Bituminous also claimed that the instructions on the warranty claim were confusing and prejudicial. Even assuming the instructions were erroneous and prejudicial to the extent that reversal on the warranty claim was granted, the verdict against Bituminous on the breach of contract claim, negligence claim, and breach of good faith and fair dealing claim still remains. Because we find that the verdict is sufficiently sustained on these other theories we need not address whether the trial court erred when it instructed on the warranty claim. *See Thomas*, 2001 SD 73, ¶¶8-9, 629 NW2d at 592-93 (holding that a general jury verdict must be upheld if it could possibly be sustained on one of the theories properly instructed).

properly instructed on the nature of the applicable comparative fault statute and the verdict form did not preclude following those instructions. It is, of course, presumed that the jury understood and abided by these instructions.") (citing Fjerstad v. Sioux Valley Hospital, 291 NW2d 786, 788 (SD 1980)). Bituminous has failed to establish the trial court abused its discretion by using the special verdict form.

### 4. Bituminous claims that the award of prejudgment interest was erroneous as a matter of law.

[¶22.] We have previously stated that "[p]rejudgment interest is mandatory, not discretionary in an action for recovery of damages." Setliff v. Stewart, 2005 SD 40, ¶46, 694 NW2d 859, 871 (citation omitted). SDCL 21-1-13.1 provides in pertinent part that:

> Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim, or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt. Prejudgment interest is not recoverable on future damages, punitive damages, or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life, or loss of society and companionship. If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered.

[¶23.] Bituminous argues that the damages were too uncertain to be taxed with prejudgment interest and also that all the damages impermissibly constituted future damages. Specifically, Bituminous claims that because the experts could not agree on a certain figure of damages and because of the necessary apportionment of

fault the amount of damages were uncertain, and therefore, according to SDCL 21-1-11, cannot be taxed with prejudgment interest. We disagree. SDCL 21-1-11 does not apply to this case or any suit that has "commenced on or after July 1, 1990." SDCL 21-1-13.2. The law clearly provides as follows: "The provisions of § 21-1-13.1 apply to any suit commenced on or after July 1, 1990. The provisions of §§ 21-1-11 and 21-1-13 apply to any suit commenced before July 1, 1990." SDCL 21-1-13.2. In applying the present rule, we have said: "[T]he adoption of SDCL 21-1-13.1 in 1990 abrogated the rule that prejudgment interest cannot be obtained if damages remain uncertain until determined by a court. Under the present rule in SDCL 21-1-13.1, prejudgment interest is allowed from the day the loss or damage occurred regardless of whether the damages are certain." City of Aberdeen v. Rich, 2003 SD 27, ¶19, 658 NW2d 775, 781 (internal citations omitted). Thus, "[p]rejudgment interest is allowed from the date of the loss regardless of whether the damages were known with certainty." All Star Constr. Co., Inc. v. Koehn, 2007 SD 111, ¶24, 741 NW2d 736, 742. Moreover, a "[m]ere difference of opinion as to the exact amount of damages [is] not sufficient to excuse [a defendant] from compensating [a plaintiff] for loss of the use of its money." Honomichl v. Modlin, 477 NW2d 599, 601 (SD 1991).

[¶24.] Finally, Bituminous argues that any damages sustained by the District were future damages because the District has not expended funds to replace the defective track. Pre-judgment interest begins "from the day that the loss or damage occurred." SDCL 21-1-13.1. The loss or damage occurred when the District received the faulty track. Just because the District has not incurred the expense of replacing

-14-

the track does not make its loss a future damage. The trial court properly instructed the jury on how to determine damages and the date for prejudgment interest. Bituminous did not object to the prejudgment interest instructions. We must assume the jury followed the instructions and, based on the evidence, set July 4, 2004, as the date that the damages "occurred." *Kehn Ranch, Inc.*, 394 NW2d at 720 (stating that when a jury is properly instructed we "presume[] that the jury understood and abided by these instructions") (citing *Fjerstad*, 291 NW2d at 788). *See also* Berry v. Risdall, 1998 SD 18, ¶12, 576 NW2d 1, 5 (stating where "a verdict is susceptible to more than one construction, the construction which sustains the verdict must be applied") (citing *Fjerstad*, 291 NW2d at 788; Baker v. Jewell, 77 SD 573, 580, 96 NW2d 299, 304 (1959)). The prejudgment interest award was not erroneous as a matter of law.

### 5. Bituminous claims the trial court erred in awarding attorneys' fees and expert witness costs

[¶25.] Finally, Bituminous contends that the court erred as a matter of law and/or abused its discretion in awarding attorneys' fees and expert witness costs. It is well settled that awarding attorneys' fees and costs is allowed when expressly agreed to by the parties. Fuller v. Croston, 2006 SD 110, ¶41, 725 NW2d 600, 612 (citing Credit Collection Serv., Inc. v. Pesicka, 2006 SD 81, ¶6, 721 NW2d 474, 476); *Rich*, 2003 SD 27, ¶25, 658 NW2d at 781 (citing *Matter of Estate of* O'Keefe, 1998 SD 92, ¶17, 583 NW2d 138, 142). In this case, Article 13 of the contract's general conditions expressly stated that if Bituminous' work was found to be defective, as defined within the contract, Bituminous was responsible for all costs and

disbursements, including attorneys' fees, spent by the District in bringing a civil action. Moreover, Article 13.07 expressly states:

> [The District] may have the defective Work removed and replaced, and all Claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to such correction or repair or such removal and replacement . . . will be paid by [Bituminous].

[¶26.] Because the contract provisions permitted the award of attorneys' fees and other costs, the District merely had to establish, by a preponderance of the evidence, "[t]he basis for such an award." *Credit Collection Serv.*, 2006 SD 81, ¶6, 721 NW2d at 476 (quoting Jacobson v. Gulbransen, 2001 SD 33, ¶31, 623 NW2d 84, 91). Based on the verdict and contract provision, Bituminous has failed to establish that the trial court abused its discretion when it awarded attorneys' fees, expert witness fees and other costs.

[¶27.] We affirm on all issues.

[¶28.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.