#24692-a-JKM

**2008 SD 101**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SUSAN JEAN KURTZ,                 Plaintiff and Appellee,

     v.

AARON LEE SQUIRES,             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STUART L. TIEDE
Judge

* * * *

N. DEAN NASSER, JR. of
Nasser Law Offices, PC           Attorneys for plaintiff
Sioux Falls, South Dakota        and appellee.

ERIC C. SCHULTE
MARK F. MARSHALL of
Davenport, Evans, Hurwitz
 & Smith, LLP                 Attorneys for defendant
Sioux Falls, South Dakota        and appellant.

* * * *

ARGUED ON AUGUST 27, 2008

OPINION FILED **10/29/08**

#24692

MEIERHENRY, Justice

[¶1.]       Aaron Squires appeals a jury verdict that found him liable to Susan

Kurtz for damages resulting from an automobile accident.  We affirm.

[¶2.]       On August 24, 2001, Squires rear-ended Kurtz.  Although Squires

admitted that he was negligent and that Kurtz was not contributorily negligent, he

denied that the collision resulted in any injury to Kurtz.  Kurtz, however, claimed

that the collision caused her permanent injuries consisting of persistent severe neck

and shoulder pain and constant headaches that often became unmanageable and

frequently required chiropractic treatment.  A jury found Squires liable to Kurtz in

the amount of $100,000.  Squires moved for a new trial.  The circuit court denied

the motion.  Squires appeals and raises three issues.

### ISSUES

1)     **Whether the circuit court abused its discretion by denying the motion for a new trial because the subject of liability insurance was raised in voir dire.**

2)     **Whether the circuit court abused its discretion by overruling Squires' chain of custody objection to the bumper cover.**

3)     **Whether the circuit court abused its discretion by curtailing Squires' ability to inquire into Kurtz's previous claim of permanent disability.**

[¶3.]       The three issues that Squires raises on appeal all involve an abuse of

discretion standard of review.  "We review denials of motions for a new trial under

an abuse of discretion standard."  City of Brookings v. Ramsay, 2007 SD 130,

¶14, 743 NW2d 433, 438 (citation omitted).  "We afford broad discretion to [circuit

courts] in deciding whether to admit or exclude evidence."  State v. Packed, 2007 SD

-1-

75, ¶24, 736 NW2d 851, 859 (citations omitted). "However, '[w]hen a [circuit] court misapplies a rule of evidence, as opposed to merely allowing or refusing questionable evidence, it abuses its discretion.'" *Id.* (quoting State v. Guthrie, 2001 SD 61, ¶30, 627 NW2d 401, 415 (citing Koon v. United States, 518 US 81, 100, 116 SCt 2035, 2047, 135 LEd2d 392 (1996))). "Although we have repeatedly invoked stock definitions, the term 'abuse of discretion' defies an easy description. It is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." Arneson v. Arneson, 2003 SD 125, ¶14, 670 NW2d 904, 910 (citation omitted).

## ANALYSIS

*Subject of Liability Insurance Raised in Voir Dire*

[¶4.]        First**,** Squires claims that he should have been granted a new trial because the subject of liability insurance was injected into the trial during voir dire in violation of a motion in limine. Prior to trial, the circuit court granted Squires' request for an order in limine requiring: "[Kurtz], her counsel, and all witnesses, to refrain from making any reference to the fact that Defendant may be insured against liability." *See also* SDCL 19-12-13 (stating generally that evidence of a party's liability insurance status "is not admissible upon the issue whether he acted negligently or otherwise wrongfully"). During voir dire, Squires made two motions for mistrial. Squires claimed that Kurtz had violated the order by erroneously discussing liability insurance. The circuit court denied both motions. After the jury returned a verdict adverse to Squires, he moved for a new trial based on these same complaints.

[¶5.] Mention of insurance arose when Kurtz's counsel initially asked jurors if they had any preconceived notions about whether a particular type of car accident would produce large or small injuries. Counsel's question followed the remarks of a medically trained juror who opined that patients quite often exaggerate the severity of their injuries. A different juror, in response to counsel's inquiry, explained that she had been at fault in what she considered a minor accident that resulted in injuries to the 16-year-old driver of the other car. She explained that she originally questioned the legitimacy of the other driver's injuries but ultimately changed her mind when the injuries resulted in surgery. The juror interjected that "they had settled out of court." Kurtz's counsel then asked the juror, "Okay. So how did you feel about them having settled that on your behalf?" The juror answered that she was glad she did not have to go to court. Kurtz's counsel followed up, "[a]nd were you glad in your case that somehow through your company that helped you with it you were made accountable to take care of this boy."

[¶6.] Later in voir dire, Kurtz's counsel again generally asked the jurors' opinions concerning accountability, and the difficulty of holding sympathetic persons accountable, such as children. One juror responded as follows: "There are so many variables. What is her background? What is her insurance? What is his insurance? We should take into account everything they've taken into consideration for being responsible too." Kurtz's counsel then asked the circuit court if he wanted to address the juror's response. The circuit court then gave the following admonition:

> Yes. Ladies and Gentlemen of the Jury, whether or not a party
> has insurance against liability is completely irrelevant to any

issue in this case. You should not consider it at all. You are to decide this case based solely upon the evidence that is received here in open court under the instructions given by the [c]ourt as to the law. And whether or not a party has insurance is irrelevant and should not be considered by you.

Kurtz's counsel concluded voir dire with a general question to the jurors if they had any other responses or concerns. The juror, who had previously explained that her accident was settled out of court, volunteered additional information about the driver who had been injured, his surgery, and her ultimate conclusion that he had been injured. Kurtz's counsel then asked, "You felt the need to be accountable when you realized that this was a real injury?" She answered, "yeah." Counsel concluded his voir dire by asking the jurors, "Do you feel it's all right when you make a mistake to step up to the plate? Okay."

[¶7.]    Squires argues that the circuit court should have granted a new trial because of the queries of Kurtz's counsel. Squires claims that counsel's follow up questions and comments to jurors were cleverly veiled attempts to link defendant's personal accountability to the existence of insurance coverage and the insurance companies' accountability. Squires argues that "whether one is 'glad' that his 'company' 'made him feel accountable' or 'stepped up to the plate' or would have felt 'bad' if the person was 'not accountable' simply should play no role in voir dire." Squires further argues that this line of questioning is unrelated to a juror's ability to be impartial and injects prejudicial concepts into the trial process. Specifically, Squires argues that counsel's questioning violated the court's order forbidding reference to defendant's liability insurance.

[¶8.]        In *Atkins v. Stratmeyer,* we said,"'[s]tatements of witnesses implying that the defendant carried liability insurance, not responsive to questions asked but in the nature of voluntary statements that could not have been anticipated, are not deemed to be reversible error if they are excluded from consideration by the jury under proper instructions of the court.'" 1999 SD 131, ¶13, 600 NW2d 891, 896 (quoting Schuetzle v. Nash-Finch Co., 72 SD 588, 594, 38 NW2d 137, 140 (1949)). Here, the circuit court consistently sustained Squires' objections and admonished the jury that insurance was "irrelevant" and "should not be considered." We have consistently "presume[d] that juries understand and abide by instructions." Gettysburg Sch. Dist. 53-1 v. Helms & Assoc., 2008 SD 35, ¶11, 751 NW2d 266, 271 (citation omitted). The record also reflects that the circuit court was concerned that counsel had "gone too far" with some of the questioning and admonished counsel. The circuit court, however, denied a motion for mistrial. The circuit court acknowledged that "most people are aware of [insurance]" and that he "[did] not believe that the inquiry has gone so far as to unfairly taint these jurors." The circuit court noted that "[b]ased upon the responses that I heard in the courtroom I believe the jury has indicated that they are prepared to listen to this case and to decide this case based upon the evidence and the law given to them under the instructions of the [c]ourt."

[¶9.]        In denying the motion for new trial, the circuit court reasoned that the jurors' spontaneous references to insurance did not "arise during the evidence portion of the trial," they were entirely unrelated to the questions asked by Kurtz's counsel, and "[n]one of the references to liability insurance were the result of an

intentional or even negligent attempt by counsel to inject the issue of liability insurance into the proceeding." The circuit court found "nothing to indicate bad faith on the part of Plaintiff's counsel or any attempt or design by Plaintiff's counsel to advise the jury that an insurance company was defending the Defendant." The circuit court further found that Kurtz's counsel's follow-up questions of the juror were a "legitimate and good faith effort to ascertain whether or not [the juror] could be fair and impartial in light of her prior experience." Finally, the court concluded, based on its observation of the voir dire and the trial, that Squires received a fair trial and that the jury's verdict was not the result of passion, prejudice or sympathy. A review of the record supports the circuit court's ruling. Squires has failed to show that the circuit court abused its discretion in denying a motion for a new trial.

*Squires' chain of custody objection to the bumper cover*

[¶10.]     Second, Squires claims that the circuit court abused its discretion by admitting photographs of the front bumper cover of Squires' vehicle because the bumper cover had not been properly preserved and because Kurtz had "failed to meet the requirements set forth in SDCL 19-17-1 (Rule 901) for authentication."[1]

---

1.     SDCL 19-17-1 (Rule 901) states:
              The requirement of authentication or identification as a condition
              precedent to admissibility is satisfied by evidence sufficient to support
              a finding that the matter in question is what its proponent claims. By
              way of illustration only, and not by way of limitation, the following
              are examples of authentication or identification conforming with the
              requirements of this section:
              (1) Testimony of a witness with knowledge that a matter is what it is
              claimed to be.

                                                              (continued . . .)

-6-

#24692

[¶11.] We only reverse a circuit court's ruling regarding authentication if we find an abuse of discretion. We have said, "The [circuit] court has great discretion in regard to the competency of chain of custody evidence." State v. Brings Plenty, 490 NW2d 261, 265 (SD 1992) (citation omitted); *see also* State v. Lownes, 499

---

(. . . continued)

(2) Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

(3) Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

(4) Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

(5) Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if:

(a) In the case of a person, circumstances, including self-identification, show the person answering to be the one called; or

(b) In the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

(7) Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

(8) Evidence that a document or data compilation, in any form,

(a) Is in such condition as to create no suspicion concerning its authenticity;

(b) Was in a place where it, if authentic, would likely be; and

(c) Has been in existence twenty years or more at the time it is offered.

(9) Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

(10) Any method of authentication or identification provided by a statute or by other rules prescribed by the Supreme Court pursuant to statutory authority.

*Id.*

-7-

NW2d 896, 901 (SD 1993) (citations omitted). In addition, the chain of custody need not be absolutely perfect, but it must "'strongly suggest the exact whereabouts of the exhibit at all times.'" State v. Serl, 269 NW2d 785, 789 (SD 1978) (quoting Butler v. State, 154 IndApp 361, 289 NE2d 772 (1972)). An advocate for evidence need only "demonstrate with reasonable probability that no tampering or substitution has occurred, however it need not negate every possibility of tampering or substitution." *Lownes*, 499 NW2d at 901 (citations omitted). "Mere suspicion or speculation is insufficient to establish a break in the chain of custody." *Id.* (citation omitted). Moreover, "[e]ven if error is found, [ ] 'it must be prejudicial in nature before this Court will overturn the [circuit] court's evidentiary ruling.'" State v. Williams, 2006 SD 11, ¶8, 710 NW2d 427, 430 (citations omitted).

[¶12.] Kurtz traced the chain of custody of the bumper cover through multiple witnesses. Kurtz testified that Squires sold his damaged vehicle to Aamco Transmission shortly after the accident. One of the co-owners of Aamco Transmission, Troy Thompson, testified that Squires brought the vehicle to him for transmission repair around September of 2001 and described the damage to the bumper at that time. Thompson then testified that he sold the car to Nordstrom's Auto Service in the same condition he received it from Squires, except with a working transmission.

[¶13.] A co-owner of Nordstrom's Auto Service, Shannon Nordstrom, identified the bumper cover and testified as to its condition. He testified that the bumper cover was structurally the same as when he received it from Thompson. He indicated that exposure to sun and weather while in his possession had caused some

deterioration to the cosmetic appearance of the bumper. Nordstrom also testified that he sold the bumper cover to David Rowe, an employee of Kurtz's lawyer.

[¶14.] Rowe then testified that he took photographs of the bumper cover when he purchased it from Nordstrom and took the bumper cover to the law office. Later, Thompson visited the law office to examine the bumper cover. He concluded that it was "in substantially the same physical and structural condition as it was when [he] saw it [last]." However, he did note that "there was a little more paint missing on the edges."

[¶15.] The evidence traced the location and condition of the bumper cover from the accident to the time of trial. The bumper cover was sufficiently identified and described to demonstrate with reasonable probability that no tampering or substitution had occurred. Based on this chain-of-custody testimony, the circuit court admitted the photographs of the bumper cover. Even had the photographs of the bumper cover been inadmissible, Kurtz's proof of damages did not turn on its admission. The more pertinent evidence of damage came from the testimony of both Kurtz and Squires, who testified about the condition of Squires' car after the accident and the resulting damage to the bumper. Kurtz testified that the front of Squires' vehicle "looked really bad" and that "there [were] dents." Squires testified that after rear-ending Kurtz his license plate was bent and the bumper cover's paint was chipped. Also, the investigating officer testified that Squires' vehicle had approximately $1,500 in front end damage and that this damage constituted more than just a "bent license plate." These testimonies largely corroborate the physical evidence of the structural and surface damage to the vehicle. Therefore, even if

Squires had been able to show that the photographs of the bumper cover were inadmissible, he did not show prejudice.

*Admissibility of Kurtz's Pleading in another Lawsuit*

[¶16.]     Finally, Squires claims that the circuit court erred by not admitting into evidence a complaint Kurtz filed in another lawsuit. The other lawsuit resulted from a 2003 automobile accident involving Kurtz and Violet Lucille Kumlien. Squires claims that the other pleading should have been admitted as an admission against interest under SDCL 19-16-3 (Rule 801(d)(2)) and to impeach Kurtz under SDCL 19-14-25 (Rule 613(b)).

[¶17.]     Kurtz alleged in her complaint against Kumlien that she had suffered "permanent bodily injury." However, her claim of permanent injury from the 2003 Kumlien accident ultimately changed, and she settled that lawsuit. Kurtz moved for an order in limine barring discussion of her other litigation. The circuit court granted the motion, in part, but permitted Squires to question Kurtz about her "claim" of permanent injuries on cross-examination. The circuit court ruled that if Kurtz answered that she had not previously claimed permanent injury, the pleading would be admissible. The circuit court, however, noted that he thought "the pleading [was] somewhat ambiguous because it allege[d] both permanent disability or injury and it also allege[d] aggravation of previous or existing injuries." Abiding by the circuit court's ruling, Squires' counsel asked Kurtz at trial whether she had previously claimed permanent injury from the Kumlien accident. She answered, "I thought – I didn't know. I thought I was. I didn't know. Yes. I didn't know." When asked again she answered, "Yes, I didn't know." Squires' counsel then asked,

"Ms. Kurtz, now you say you did previously claim that you were permanently injured because of this accident. Do you know when you made that claim?" Kurtz, answered, "I think – I don't know for sure what you mean. I think right at the --." Counsel interrupted with another question, "Any idea when you made that claim? Can you share that with the jury?" Kurtz then answered as follows: "Right – I guess right after, you know. I don't know I'm kind of confused."

[¶18.]    Squires claims that the complaint was admissible under SDCL 19-16-3 (Rule 801(d)(2)), which provides that "a statement is not hearsay if it is offered against a party and is: . . . 2) A statement of which he has manifested his adoption or belief in its truth[.]" We have previously said "controlling precedent in this state barred receipt of the complaint as direct evidence against the plaintiff. . . ." Raverty v. Goetz, 82 SD 192, 201, 143 NW2d 859, 864 (1966). "In the absence of an affirmative showing by defendant that the proffered allegation was inserted under the personal direction of the plaintiff or had since knowingly received his sanction or ratification, it was not competent evidence as an admission against interest." *Id.* (citing Kuhn v. Watertown Cement Prod. Co., 75 SD 491, 68 NW2d 241 (1955)). Even though *Raverty* was decided before South Dakota adopted SDCL 19-16-3 (Rule 801(d)(2)), its analysis is still applicable. The party offering a party-opponent pleading as a statement against interest must be able to show that the party knowingly sanctioned or ratified the admission.

[¶19.]    Clearly, Squires has not shown that Kurtz personally directed or knowingly ratified the allegation of permanent injury in the Kumlien lawsuit.

Kurtz's answer or explanation was that the prior claim of permanent injury was that she thought she was permanently injured but did not know.[2]

[¶20.]    Squires cites several federal decisions that have applied Rule 801(d)(2) to allow a pleading as substantive evidence against a plaintiff. One of the federal cases Squires relies on is *Arnold v. Groose.* 109 F3d 1292 (8thCir 1997). *Arnold* involved a pro se prisoner litigant's 42 USC § 1983 action against prison officials. The Eighth Circuit Court of Appeals reversed the district court's ruling denying admission of portions of Arnold's handwritten pro se complaint from an earlier lawsuit involving the same facts. The eighth circuit ruled that the prior pleading should have been admitted under Rule 801(d)(2)(A) as an admission by a party opponent because the facts alleged in the prior pleading were inconsistent with his later pleading and his trial testimony was "his own handwritten statements," and the "entire case depended on the credibility of Arnold's testimony." *Arnold*, 109 F3d at 1296-97.

[¶21.]    The *Arnold* case is distinguishable from the case before us in several respects. Arnold's pleadings were pro se in his own handwriting. Arnold's allegations that prison officials conspired to kill him depended entirely on Arnold's credibility involving a taped recording he made containing "two benign conversations" and a "log of the conversations the tape had allegedly contained." *Id.* at 1296. In contrast, Kurtz's pleadings were prepared by an attorney and were not

2.    Squires' counsel admitted to the trial court that he had received correspondence from Kurtz's counsel that the report from Kurtz's expert was that Squires' accident had caused the permanent injuries. Because Kurtz's expert concluded that Squires' accident was the cause, Kurtz decided to settle the other lawsuit.

pro se handwritten pleadings. Kurtz's case did not rely solely on her credibility and involved other witnesses and expert testimony. Additionally, the circuit court allowed Squires to use the content of the prior pleading for impeachment. The other cases cited by Squires are similarly distinguishable.[3]

[¶22.] Although Squires claims that he was prejudiced by the circuit court's ruling because he was not able to impeach Kurtz with the Kumlien pleading, the record does not support his claim. The circuit court originally granted the motion in limine but allowed admission of the pleading if Kurtz denied her prior claim. At trial, Squires was able to cross-examine Kurtz and specifically inquired if she had made a previous claim for permanent injury and the timing of that claim. In response, Kurtz admitted that she had previously claimed to have been permanently injured. In addition, Squires' counsel reminded the jury of Kurtz's admission in his closing argument as follows:

> . . . Ms. Kurtz says that she was doing significantly better prior to that 2003 accident. And when I questioned her she said, yes, at one point in time she was claiming that she was permanently injured because of that accident. I think that's something that's not insignificant and we should keep in mind when we look at the evidence of this particular case.

---

3. In *Williams v. Union Carbide Corp.*, the Sixth Circuit Court of Appeals determined that the prior allegations were properly admissible under both Rule 801(d)(2) and Rule 403. 790 F2d 552, 556 (6thCir 1986). The court found no unfair prejudice in allowing the prior allegations. *Id.* The *Williams* court did not consider that the prior allegations would be too confusing to the jury. *See id.* Similarly, in *Dugan v. EMS Helicopters*, Inc., the court held that an ancillary complaint was admissible under Rule 801(d)(2) as an admission against interest and under Rule 403 as more probative than prejudicial. 915 F2d 1428, 1434-35 (10thCir 1990).

In denying Squires' motion for a new trial, the circuit court explained that the other pleading merely duplicated Kurtz's testimony and was more prejudicial than probative. The circuit court further explained its concern that admitting the pleading would have violated the collateral source rule and risked tainting the jury because the jurors would have wanted to know if Kurtz was compensated from the other lawsuit. *See* Moore v. Kluthe & Lane Ins. Agency, Inc., 89 SD 419, 434, 234 NW2d 260, 269 (1975) (recognizing that compensation from a collateral source, independent of the wrongdoer, will not reduce the damages recoverable from the wrongdoer).

[¶23.]     Squires' main complaint is that he could not adequately impeach Kurtz without admission of the pleading itself. The circuit court's ruling, however, allowed Squires to impeach Kurtz by referring to the content of the pleading and her previously claimed permanent injury. The court also provided for introduction of the actual pleading had Kurtz denied her prior claim. Squires has not shown that the circuit court abused its discretion.

[¶24.]     Squires argues that the circuit court's errors, standing alone and cumulatively, deprived him of a fundamentally fair trial. We disagree. Since we find no abuse of discretion in the circuit court's rulings, we affirm on all issues.

[¶25.]     GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶26.]     ZINTER, Justice, concurs specially.

ZINTER, Justice (concurring specially).

[¶27.]      I join the opinion of the Court and write only to supplement the Court's discussion of Kurtz's counsel's comments regarding liability insurance during *voir dire*. The Court's opinion does not fully set forth what occurred. Furthermore, in my view, counsel's statements violated the circuit court's ruling on Squires's motion *in limine* prohibiting any mention of insurance. Nevertheless, I concur because, as the Court explains, the circuit court sustained objections to the comments, gave a cautionary admonition, and was in the best position to determine whether counsel's remarks prejudicially tainted the jury.

[¶28.]      As the Court observes, Squires argues that he was entitled to a new trial because Kurtz's counsel injected the subject of liability insurance in violation of Squires's motion *in limine*. In determining whether Kurtz's counsel violated the circuit court's ruling on this motion, however, this Court mentions only the first sentence of the motion that prohibited references "to the fact *that Defendant may be insured* against liability." *See supra* ¶4 (emphasis added). Although counsel's statements did not violate that sentence, the last sentence further prohibited any "references to liability insurance . . . at all times during this trial, including *voir dire. . . .*" Counsel's statements clearly violated this prohibition, which is not mentioned by this Court.

[¶29.]      The violation is not apparent because this Court does not fully disclose the extent and context of counsel's statements. The problem started when a juror voluntarily disclosed that she had previously been involved in an auto accident "and our *insurance handled it*." (Emphasis added.) After the juror then revealed "they

settled out of court," counsel gratuitously interjected: "Okay. *So how did you feel about them* [the insurance company] having settled that on your behalf?" After the juror responded that she was glad she did not have to go to court, counsel pursued the insurance matter even further inquiring, "and *were you glad* in your case that somehow *through your company* [the insurance company] that helped you with it you were made accountable[4] to take care of [the injured party]?" In my view, these intentional statements relating to a tortfeasor's insurance and accountability violated that portion of the court's ruling that prohibited any references to insurance. Certainly, whether a juror was glad that she had liability insurance to make her accountable in an unrelated proceeding had nothing to do with selecting fair and impartial jurors to determine liability and damages in this case. Counsel improperly interjected the subject of insurance accountability into *voir dire*, s*ee generally* Atkins v. Stratmeyer, 1999 SD 131, ¶13, 600 NW2d 891, 896, and the Court's opinion should not be read to implicitly approve such statements.

[¶30.] Nevertheless, as the Court notes, the circuit court sustained objections to the questions, admonished the jury, and was in a better position to determine prejudice. I concur on that basis.

---

4. Squires points out that Kurtz's counsel made numerous references to accountability. Squires also argues that prejudicial error was created by the references to insurance coupled with the references to being "accountable" for one's actions. I also defer to the circuit court's trial rulings and prejudice determination on this issue.